IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARNELL TURNER,                )
                               )
        Plaintiff,             )
                               )
        v.                     )      Civil Action No. 07-1269
                               )
PRO-SOLUTIONS FOR              )
CHIROPRACTIC, INC.,            )
                               )
        Defendant.             )

REPORT AND RECOMMENDATION

I. Recommendation

Presently before the court is Defendant, Pro-Solutions for Chiropractic's ("Pro-Solutions"), motion for summary judgment as to Plaintiff, Darnell Turner's ("Turner") claim for race discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §1981, and the Pennsylvania Human Relations Act, 43 P.S. § 955(a). It is respectfully recommended that Pro-Solutions' motion for summary judgment (Docket No. 21) be granted.

II. Report

Under Fed.R.Civ.P.56(c), "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law[,]" summary judgment should be granted. The threshold inquiry is whether there

are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250(1986). A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322(1986). In making this determination, the non-moving party is entitled to all reasonable inferences. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). A court may not, however, make credibility determinations or weigh the evidence in making its determination. Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 150(2000).

    A.    Factual and Procedural History

Dr. Maurice Pissiciottano is the Chairman and Chief Executive Officer of Pro-Solutions, a company that sells therapeutic and diagnostic materials to chiropractors. In February 2006, Turner, an African-American, was hired by Edward Bishop ("Bishop"), Pro-Solutions' Director of Operations, to take over the warehouse function of the company which involved shipping and tracking products sent to Pro-Solutions' customers. For a period sometime prior to Turner's hiring, the operation of the warehouse

2

was outsourced to an independent contractor.

In May 2006, on Turner's recommendation, Pro-Solutions hired Bryan Cherry("Cherry"), an African-American, to assist in the warehouse. A third employee, Nicholas Pissiciottano, Dr. Pissiciottano's brother, also worked in the warehouse, however, his duties focused on configuring and customizing computers for customers and not on the actual shipment of the products.

In September 2006, Richard Erenberg, the owner of the warehouse, reported to Dr. Pissiciottano that Turner asked one of Erenberg's employees if he would be interested in buying a television from Pro-Solutions' warehouse space. Dr. Pissiciottano related this information to Harry Fruecht, the Peters Township Chief of Police. Chief Fruecht explained that the warehouse was located in Cecil Township and outside his geographical jurisdiction, but recommended that Dr. Pissiciottano conduct a "sting" operation to try to catch Turner engaging in illegal activity. Dr. Pissiciottano was reluctant to proceed with such an operation, expressing concern of possible retaliation by Turner. Fruecht then advised Dr. Pissiciottano to contact the Cecil Township Police Department to discuss the situation. While Chief Fruecht himself followed up with the Cecil Township Police, Dr. Pissiciottano did not. Instead, on or about September 28, 2006, Dr. Pissiciottano instructed Bishop to terminate Turner, Cherry,

and Nicholas Pissiciottano. The warehouse employees were told that Pro-Solutions had decided that it was more cost effective to outsource the warehouse function and, as a consequence, their positions were being eliminated. For some period of time after his termination, Nicholas Pissiciottano worked intermittently without pay in the warehouse tying up loose ends.

Pro-Solutions did not ultimately outsource its warehouse operation. On October 6, 2006, Timothy Linden, a white male, was hired to work in the warehouse, but he left Pro-Solutions within a month. After his departure, the warehouse duties were assumed by employees currently working for Pro-Solutions.

What happened next is disputed by the parties, but the evidence, at this stage, will be viewed favorably to Turner, the non-moving party. According to the affidavit of Raymond Hunter, an employee of Vossloh Schwabb, another tenant of the warehouse with space adjacent to Pro-Solutions, he came into contact with the Pro-Solutions' warehouse employees on a daily basis. Shortly after the three employees were terminated, Hunter claims that Nicholas Pissiciottano:

> told me that it was messed up what Pro-Solutions did to Bryan, and that Bryan should get a lawyer and fight it. Nick said his brother did not "do well" around black people [and] that the reason his brother gave to Turner and Cherry for their firing, that their positions were being eliminated, was false.

4

(Hunter Aff. ¶¶ 10,11)(Doc. #27). Hunter related this conversation to Cherry, who, in turn, relayed it to Turner. Turner advised Cherry to contact legal counsel.

On September 9, 2007, Turner filed a complaint alleging that his termination was based upon illegal race discrimination and violated Title VII, 42 U.S.C. §1981, and the Pennsylvania Human Relations Act. At the close of discovery, Pro-Solutions filed the present motion for summary judgment.

B. <u>Direct Evidence of Discrimination</u>

In response to Pro-Solutions' request for summary judgment, Turner first asserts that there is direct evidence of race discrimination. To prove a race discrimination case directly, the evidence must demonstrate that the "decisionmakers placed substantial negative reliance on an illegitimate criterion in making their decision." <u>Jakimas v. Hoffman-LaRoche, Inc.</u>, 485 F.3d 770, 786 (3d Cir. 2007). An employee confronts a "high hurdle" when attempting to prove direct discrimination, because the evidence must be so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production. <u>Anderson v. Consolidated Rail Corporation</u>, 297 F.3d 242, 248 (3d Cir. 2002).

Under this standard, the evidence put forth by Turner to support a claim of conspicuous discrimination is markedly deficient

5

as it results from inadmissable hearsay from Raymond Hunter, discussed infra, and a mischaracterization of Dr. Pissiciottano's and Bishop's deposition testimonies. Turner claims that Dr. Pissiciottano and Bishop did not deny that they used racially derogatory language to describe Turner and Cherry, when, in fact, they both replied that they did not recall uttering such comments. "Not recalling" is quite a different response than "not denying," or restated, admitting using racial slurs.[1] Significantly, Turner himself testified that he never heard nor was ever informed of inappropriate racial remarks originating from Pro-Solutions' management.

    C.  <u>McDonnell Douglas Burden Shifting Analysis</u>

Absent direct evidence of racial animus, Turner's race

---

[1] During questioning concerning his use of racial slurs, Dr. Pissiciotanno was asked if he ever referred to Turner as a "nigger." He replied that he did not and mentioned that he "never used that term derogatorily." (Maurice Pissiciottano Dep. p.22, January 21, 2009)(Doc. # 23, Ex. 4). When asked if he ever used the term in a non-derogatory fashion, Dr.Pissiciottano answered: "I grew up in McKeesport, played sports. That's a term that gets thrown around in the locker room all the time, but never in a derogatory fashion." Id.

Even construing this statement as an admission of prior use of racially offensive language, Dr. Pissiciotanno's remarks, apparently made a number of years ago, were unrelated to the decision to fire Turner. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) (remarks by decisionmakers unrelated to decision process are rarely given great weight, particularly if made temporally remote from decision date).

6

discrimination claims are instead scrutinized under the familiar McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) burden shifting analysis. The elements of employment discrimination under Title VII mirror the elements of a section 1981 claim, see Schurr v. Resorts International Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999), and the state law claims under the PHRA are analyzed under the same framework as the federal statutes. See Woodson v. Scott Paper Company, 109 F.3d 913, 920 (3d Cir. 1997).

Turner bears the initial burden of presenting a prima facie case. To do so, he must demonstrate that he is a member of a protected class, was qualified for the position, suffered an adverse employment decision, and "the action occurred under circumstances that would give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). If Turner successfully establishes a prima facie case, the burden of production shifts to Pro-Solutions to articulate a legitimate, non-discriminatory reason for Turner's termination. If the employer presents such a reason or reasons, the burden returns to the employee to show by a preponderance of the evidence that the employer's proffered reason is pretextual. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000). In order to prove that the employer's explanation is pretextual, the employee must "submit evidence which: 1) casts sufficient doubt upon

7

each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 762 (3d Cir. 1994).

Turner has satisfied the first three elements necessary to establish a prima facie race discrimination claim. As to the fourth element, Turner contends that two circumstances suggest intentional discrimination - Nicholas Pissiciottano, the white warehouse employee, was treated favorably and not terminated and a white male was hired to replace Turner.

The only evidence suggesting that Nicholas Pissiciottano was not fired along with Turner and Cherry results from the affidavit and deposition testimony of Raymond Hunter, an employee of another warehouse tenant. Hunter averred that he continued to notice Pissiciottano working in Pro-Solutions' portion of the warehouse for a couple of weeks after Turner and Cherry were terminated. Without commenting of the ability of a non-employee to offer credible evidence on the workings of another company, Hunter's observation of the activity at the Pro-Solutions' warehouse space is consistent with Nicholas Pissiciottano's testimony that he worked in the warehouse for approximately ten days after his official

8

termination.  Thus, there is no evidence that the white employee was treated preferentially.  Nonetheless, the record is clear that a white male was hired to work in the Pro-Solutions warehouse shortly after Turner was fired, and this evidence is sufficient to satisfy the fourth element of a prima facie race discrimination case.

Pro-Solutions, in turn, advances two non-discriminatory reasons for Turner's termination - Turner was stealing merchandise from the company and the warehouse function would be better-served by outsourcing its operation. Dr. Pissiciottano testified that when he received information that Turner was illegally selling Pro-Solutions' property, he contacted the police to determine how to handle the situation.  He did not act upon the law enforcement officer's advice to conduct a "sting" operation because he feared Turner might retaliate.  Instead, Dr. Pissiciottano decided to explore the option of outsourcing the warehouse functions, an alternative which was the subject of ongoing discussion among Dr. Pissiciottano, Bishop, and Matthew Peresie, another member of the Pro-Solutions' management team.

The burden now returns to Turner to point to evidence from which a reasonable factfinder could either disbelieve Pro-Solutions' articulated legitimate reasons for his termination or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's

9

action." Fuentes, id. at 764. Under prong one of the Fuentes test, the evidence the employee proffers must be specific to survive summary judgment," see Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997), and can be satisfied by showing that the "proffered reasons are weak, incoherent, implausible, or so inconsistent that a reasonable fact-finder could rationally find them unworthy of credence." Sarullo v. United States Postal Service, 352 F.3d 789, 800 (3d Cir. 2003) (citation omitted). In other words, Turner must show that Pro-Solutions stated reason for his termination was "not merely wrong, but that it was so plainly wrong that it could not have been the employer's real reason." Jones v. School District of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999).

Under prong two of the test, the employee must present sufficient evidence that an illegitimate factor was more likely than not the motivation behind the adverse employment decision. Fuentes, 32 F.3d at 765. The Fuentes court offered that such evidence could include an employer's prior history of discrimination against the employee, that similarly situated employees not in the protected class were treated more favorably, or, that the employer has previously discriminated against other members of the employee's protected class. Id.

Turner attacks Pro-Solutions' stated reasons for his

termination on four grounds: the warehouse operation was not outsourced, Raymond Hunter's affidavit and testimony concerning events transpiring after Turner's termination, the decisionmakers' use of racial slurs when referring to Turner, and Pro-Solutions' inconsistent rationale for Turner's dismissal.

Turner argues that the outsourcing reason was pretextual because it did not occur, Pro-Solutions' management never discussed the outsourcing option with him, Raymond Hunter's affidavit and testimony that the reason given for Turner's termination was false, and Pro-Solution's failure to mention the outsourcing rationale in its Position Statement filed with the EEOC in this matter.

It is not disputed that Pro-Solutions eventually decided not to outsource the warehouse function. As explained by Pro-Solutions, the operation of the warehouse was an issue that was regularly discussed among management. Although there was no evidence that a decision on outsourcing was imminent, it provided Pro-Solutions with a companion reason to fire Turner after it received information concerning his allegedly illicit product sales. The fact that Pro-Solutions did not ultimately opt for outsourcing, standing alone, is not, however, significant. Employment decisions are reviewed for discrimination, not soundness. Fuentes, id. at 765.

Turner's other reasons for casting doubt on the

11

credibility of Pro-Solutions' interest in outsourcing are likewise wanting. First, it is understable that Turner would not be included in conversations concerning the change in the operation of the warehouse because his employment would be a casualty of such a transition. Second, Raymond Hunter's affidavit does not meet the requisites for admissibility. Under Fed. R. Civ. P. 56 (e), an "affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Hunter, an employee of another company, had no personal knowledge of Nicholas Pissiciottani's employment status on the day of their conversation. The only basis for Hunter's supposition that Nicholas remained employed with Pro-Solutions after Turner was fired was that he continued to see Nicholas at the warehouse for a couple of weeks after he was supposedly terminated. As stated, Hunter's observation was in keeping with Nicholas Pissiciottano's testimony that he worked intermittently in the warehouse for approximately ten days after his official termination.

Hunter's statements in his affidavit and deposition detailing his conversation with Nicholas Pissiciottani concerning the reasons for Turner's termination are also inadmissible. Evidence in support of a motion for summary judgment must be in a form as would be admissible at trial. Callahan v. A.E.V., Inc.,

12

182 F.3d 237, 252 n.11 (3d Cir. 1999). At the summary judgment stage, the court may consider evidence that is inadmissible in the submitted form if the party offering the evidence could fulfill the pertinent admissibility requirements at trial. Williams v.Borough of West Chester, 891 F.2d 458, 466 n.12 (3d Cir. 1989).

Hunter's testimony about a third party's, Nicholas Pissiciottani, statement that the reason given for Turner's dismissal was false and that Dr. Pissiciotanni did not "do well" around black people was offered for the truth of the matter asserted. Under Fed. R. Evid. 801(c), this statement is inadmissible hearsay unless it falls into one of the exceptions enumerated in Rule 801(d). Turner offers that Hunter's testimony is admissible under Rule 801(d)(2)(D) as "a statement by the party's agent, or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" Since the record is clear, however, that Nicholas Pissiciotanni was no longer employed by Pro-Solutions at the time of his alleged statement to Hunter, it is not admissible under this hearsay exception. Nor can Turner cure this admissibility defect at trial by offering Nicholas Pissiciotanni's testimony directly since, in his deposition, Nicholas adamantly denied that he made the statement to Hunter.

Turner also posits that outsourcing was a pretext for

his discriminatory termination because Pro-Solutions did not include this as a reason for Turner's dismissal in its Position Statement submitted to the EEOC. A review of the Position Statement belies Turner's argument. While Pro-Solutions' informed the EEOC that Turner was "fired because of credible evidence that he was involved in illegal activity," the letter also explained that rather than involving himself in a sting operation, Dr. Pissiciottani "chose instead to terminate Pro-Solutions' operation of the warehouse . . . [and][s]teps were taken to effect such warehousing." Pro-Solutions' EEOC Position Statement, March 12, 2007, (Doc. # 27, Ex. 8).

Turner's second and third attempts to discredit Pro-Solutions' non-discriminatory reasons for Turner's termination namely, Raymond Hunter's testimony concerning events transpiring after Turner's termination and the decision-makers' use of racial slurs, have already been discussed and refuted. Hunter's offerings are inadmissible hearsay and there is no evidence that Bishop or Dr. Pissiciottani used racially offensive language in reference to Turner.

Finally, Turner contends that Pro-Solutions' articulated reason that he was fired because he stole company merchandise was also pretextual. Turner submits that the only evidence linking him to illegal activity was hearsay and that the alleged theft was

never mentioned to him by Pro-Solutions' management either prior to, at the moment of, or post his termination.

Pro-Solutions' statement that Turner was fired because of information received that he was stealing televisions is not hearsay because it was not offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Rather, the statement was offered to demonstrate how this information impacted Dr. Pissiciottani's deliberations on the future of Turner's employment. Fearing retaliation, Dr. Pissiciottani decided that he did not want to confront Turner concerning the alleged thefts and, for this reason, it was not mentioned to Turner as the reason for his termination.

Accordingly, Turner has failed to provide evidence sufficient to permit this court reasonably to (1) disbelieve Pro-Solutions' articulated legitimate reasons for Turner's dismissal; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Pro-Solutions' action. Pro-Solutions did not have a prior history of discriminatory action against Turner or others in his protected class and did not treat the similarly situated white employee, Nicholas Pissiciottani, preferentially. Accordingly, Turner has not shown evidence of discriminatory intent relative to his termination sufficient to survive the employer's motion for summary judgment.

D. <u>Conclusion</u>

For the reasons stated, the court recommends that Pro-Solutions' motion for summary judgment(Docket No. 21) be granted. Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

                                      Respectfully submitted,

                                      <u>s/Robert C. Mitchell</u>
                                      Robert C. Mitchell
                                      United States Magistrate Judge

Entered: May 8, 2009